UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL PAUL PARNELL,

                Petitioner,

v.

DALE BONN,

                Respondent.

_____/

Case No. 1:26-cv-567

Honorable Phillip J. Green

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  The Court will grant Petitioner's application for leave to proceed *in forma pauperis* (ECF No. 2).

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 7.)  Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ."  28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases.  The Court is required to conduct this initial review prior to the service of the petition.  Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding— the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment."). Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner Michael Paul Parnell is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  Petitioner is serving a string of sentences imposed in three separate Muskegon County Circuit Court cases:

> In Case No. 02-047123-FC, following a bench trial, the court found Petitioner guilty of armed robbery, in violation of Mich. Comp. Laws § 750.529. On July 29, 2002, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a term of imprisonment of 45 to 100 years.
>
> In Case No. 02-047101-FH, a jury found Petitioner guilty of carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227. On

February 24, 2003, the Court sentenced Petitioner as a fourth habitual offender to life imprisonment.[1]

In Case No. 02-048012-FH, a jury found Petitioner guilty of retaliating against a witness, in violation of Mich. Comp. Laws § 750.122(8). On February 24, 2003, the court sentenced Petitioner as a fourth habitual offender to life imprisonment.[2]

The sentences challenged in the present petition are the life sentences imposed for carrying a concealed weapon and retaliating against a witness. The sentences at issue were imposed more than twenty years ago. That would seem to call into question the timeliness of the petition. Nonetheless, the petition is timely. Petitioner's judgments of sentence became final on November 22, 2024. The petition was filed with one day remaining in the period of limitation.

The petition raises one ground for relief: the sentencing court violated Petitioner's right to a jury trial by relying on facts not found by a jury to depart above the statutory maximum compelled by the mandatory guidelines and impose life sentences. (Pet'r's Br., ECF No. 1, PageID.25.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a

---

[1] Petitioner was convicted of two other offenses during this trial. (Sentencing Tr., ECF No. 1-7, PageID.61.) The court imposed term-of-years sentences for these offenses and Petitioner has already served the maximum terms. (*Id.*, PageID.76–77.)

[2] The witness-retaliation life sentence is to be served consecutively to the armed robbery sentence because Petitioner "committed the offense while [he] was serving [the] sentence on armed robbery." (Sentencing Tr., ECF No. 1-7, PageID.77.)

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

5

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324

F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo.  Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Deference to the state court judgment

Petitioner argues that none of the state courts adjudicated on the merits the issue he raises in his petition. (Pet'r's Br., ECF No. 1, PageID.38–39.)  Petitioner

states that the "federal claim was inadvertently overlooked in state court." (*Id*.)  For

that reason, Petitioner concludes that this Court may consider the issue *de novo*.

The Court does not agree with Petitioner's characterization of the issues the

state courts did or did not adjudicate.  Petitioner attaches the decisions of the trial

court and the Michigan Court of Appeals.  The Court concludes that both courts

addressed the issue raised on the merits.  The trial judge reasoned the issue was

without merit:

> Finally, the Defendant asserts that the trial judge impermissibly engaged in judicial fact-finding to support his sentencing decision. The Supreme Court has found that judicial fact-finding is appropriate to the extent that sentencing guidelines are advisory as opposed to mandatory. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). In 2003 when this Defendant was sentenced, however, the guidelines were mandatory. To the extent that offense variables were scored exclusively based on judicial fact-finding which resulted in an elevated minimum range, it would be plain error and justify relief. *Id*. However, neither at sentencing nor in this motion, does the Defendant contend that judicial fact-finding elevated the sentencing guideline range; his complaint is that it was employed to depart from the guidelines and impose a harsher sentence. The *Lockridge* decision noted that in this situation a Defendant cannot demonstrate plain error " ... because the sentencing court has already clearly exercised its discretion to impose a harsher sentence than allowed by the guidelines and expressed its reasons for doing so on the record." (emphasis supplied in part) *Id*. at n.31. The exercise of broad sentencing discretion informed by judicial fact-finding to impose a term within the range prescribed by statute does not violate the 6th Amendment. See, *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013). That is precisely what occurred in these cases.

Order, *People v. Parnell*, File Nos. 02-047101-FH, 02-48012-FH (Muskegon Cnty. Cir.

Ct. Aug. 30, 2021) (Pet'r's Br., ECF No. 1-11, PageID.153.)

The Michigan Court of Appeals did nothing to alter the trial court's reasoning;

the panel simply added to it.  The appellate court concluded "the trial court was

permitted to sentence defendant, as a fourth-offense habitual offender, up to life imprisonment." Op*., People v. Parnell*, Nos. 357004, 357005 (Mich. Ct. App. Sept. 15, 2022) (Pet'r's Br., ECF No. 1-14, PageID.220). Certainly, the court of appeals took the matter one step further than the trial court did.  The trial court stopped at the point where a departure from the guidelines, as a discretionary act, took the case outside of the Sixth Amendment protection.  The appellate court looked beyond the departure to the actual destination—a life sentence under the habitual offender guidelines— and pointed out that prior convictions have always served as "sentence enhancement mechanisms" that take the issue outside of the Sixth Amendment's jury trial guarantee.

Because the Court concludes that the state courts adjudicated the issue raised by Petitioner here, the Court may not consider the issue *de novo*, but must afford the state court adjudication due deference under 28 U.S.C. § 2254(d)(1).

**B.    Clearly established federal law excludes discretionary sentencing decisions from the Sixth Amendment jury trial guarantee**

Petitioner's argument is based on a line of Supreme Court cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction[3], any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).  A year later, in *Booker*, 543 U.S. at 220, the Supreme Court applied the *Blakely* reasoning to the federal sentencing guidelines to conclude that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment.

Then, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant

---

[3] The *Apprendi* decision, therefore, is the clearly established federal law that supports the Michigan Court of Appeals' conclusion that habitual offender determinations based on prior convictions fall outside of the Sixth Amendment jury trial guarantee.

10

or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only.  *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

Petitioner was sentenced when the Michigan sentencing guidelines were "mandatory."[4]  But that does not mean that Petitioner's sentence was constrained by the mandatory nature of the guidelines.  Here, the sentencing judge was not so constrained.  He exercised his discretion to depart from the guidelines.

---

[4] It is also worth noting that Petitioner was sentenced years before *Alleyne* was decided. When Petitioner was sentenced, the "clearly established federal law" was *Harris v. United States*, 536 U.S. 545 (2002) wherein the Court determined that "[i]f the facts judges consider when exercising their discretion within the statutory range are not elements, they do not become as much merely because legislatures require the judge to impose a minimum sentence when those facts are found—a sentence the judge could have imposed absent the finding." *Id.* at 560. Alleyne overruled Harris. *Alleyne* is not retroactive to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 488 (6th Cir. 2014). Nonetheless, because Petitioner's case was on direct review long after *Alleyne* was decided, the Court concludes that it applies here.

The use of "judge found" facts to support an exercise of discretion when imposing sentence could not violate any Sixth Amendment right.  From the inception of this line of authority in *Apprendi*, to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here, violates the Sixth Amendment.  *See Booker*, 543 U.S. at 232 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi*, 530 U.S. at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute."); *Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."); *United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014) ("But both *Apprendi* and *Alleyne* took care not to disturb the district court's discretionary fact-finding in other circumstances . . . . Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury." (internal citation omitted)).

In short, the petition, on its face, fails to show that the state courts' rejection of his Sixth Amendment claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

12

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined Petitioner's claim under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, for the same reason the Court

13

concludes that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order granting Petitioner leave to proceed *in forma pauperis* and denying a certificate of appealability.

Dated: August 6, 2026                    /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge

14